# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANCIS L. QUINN, ) | |
| Appellant, ) | |
| v. ) | Civil Action No. |
| ) | 14-40083-FDS |
| SHARON QUINN, ) | |
| Appellee. ) | |

## MEMORANDUM AND ORDER ON
## APPEAL FROM BANKRUPTCY COURT

**SAYLOR, J.**

This is an appeal from a final judgment of the United States Bankruptcy Court for the District of Massachusetts. Appellant Francis L. Quinn and appellee Sharon Quinn are former spouses who divorced as of February 29, 2012, pursuant to a separation agreement. The agreement provided, among other things, that Francis would fully indemnify Sharon for any obligations arising under the second mortgage taken out by the parties on what had previously been their family home. As of June 13, 2012, Sharon owed $20,000 on the mortgage.

On November 21, 2012, Francis filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code. Sharon filed a proof of claim as to the $20,000 debt. In response, on July 19, 2013, Francis brought an adversary proceeding against Sharon. He did not dispute the debt, but he sought a declaration that the debt was dischargeable pursuant to 11 U.S.C. §§ 523(a)(15) and 1328(a).

After a trial, the Bankruptcy Court entered judgment in favor of Sharon, finding that the debt was a non-dischargeable domestic support obligation under § 523(a)(5). For the reasons set

forth below, the order of the Bankruptcy Court will be affirmed.

I.      **Jurisdiction and Standard of Review**

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). In reviewing the Bankruptcy Court's decision, this Court functions as an appellate court and is authorized to "affirm, modify, or reverse a bankruptcy judge's [order] or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The Bankruptcy Court's conclusions of law are reviewed *de novo*; its findings of fact are reviewed for clear error. *See Stornawaye Fin. Corp. v. Hill (In re Hill)*, 562 F.3d 29, 32 (1st Cir. 2009) (citing *In re Healthco Int'l, Inc.*, 132 F.3d 104, 107 (1st Cir. 1997). Mixed questions of law and fact are also reviewed for clear error, "unless the bankruptcy court's analysis was based on a mistaken view of the legal principles involved." *In re Carp*, 340 F.3d 15, 22 (1st Cir. 2003).

II.     **Background**

   A.   **Factual Background**

Unless otherwise noted, the following facts are drawn from the Bankruptcy Court's findings of fact (as stated in open court at the conclusion of the trial) or the joint pretrial statement of the parties. (*See* R. at 42, 141-44; Tr. at 78-81).

Francis and Sharon Quinn were married on May 14, 1999. They had no children, and they separated in September or October of 2007. As of the time of their separation, they owned a home located at 131 Legate Hill Road in Leominster, Massachusetts. The property was encumbered by two mortgages: a first mortgage in the amount of $450,000, and a second

mortgage in the amount of approximately $90,000.[1]  The lender for the second mortgage was Wells Fargo Bank, N.A.  Both parties were liable to Wells Fargo on that mortgage as of the date of separation.

In October 2008, Sharon's interest in the Leominster property was conveyed to Francis.  However, Sharon remained liable to Wells Fargo on the obligation secured by the second mortgage.

At some point in 2008 or shortly thereafter, Francis stopped making payments on the second mortgage and the loan fell into default.  In lieu of foreclosure, the property was sold at a short sale; that sale resulted in a deficiency of approximately $90,000.

In 2011, Wells Fargo brought a civil action against both Francis and Sharon to recover the deficiency.  Francis did not answer the complaint and was subsequently defaulted.

A divorce judgment was issued on February 29, 2012.  The parties had entered into a separation agreement that was subsequently made enforceable by integration within the state court divorce order.  The separation agreement was not drafted by the parties, but instead was created with the assistance of a Probate Court family service officer on a form provided by that officer.  The parties were not represented by counsel during the creation of the separation agreement.

The form encompassing the separation agreement was divided into categories of obligation, including "Property Division and Debts" and "Alimony."  The former section was

---

[1] The Bankruptcy Court did not make an exact finding as to the original amount of this mortgage.  He stated: "[I]n 2006 a further borrowing was made from Wells Fargo in an amount which—somewhere between [$]90[,000] and $100,000, maybe $85,000 and $100,000.  I don't think any of them—either of the parties were particularly clear about that, but it was certainly a significant sum, say for these purposes $90,000 and that was secured by a second mortgage on the property."  (Tr. at 79).

3

subdivided into "Real Estate," "Personal Property," "Pension/Retirement Benefits," "Stocks/Bonds," "Bank Accounts," and "Debt."  Within the "Debt" category, the form included a typed category for "marital debts."  Specifically, the typed portion of the form read, "The marital debts of the parties shall be paid as follows:" and the handwritten portion read, "Husband agrees to continue to assume all responsibilities from the parties 2nd Mortgage through Wells Fargo loan #650327301801998."  As of the time of the divorce judgment, Sharon was still liable to Wells Fargo for the full $90,000 deficiency.

In the "Alimony" section of the form, there is a handwritten X-mark next to the following typed language:  "Each party hereby waives past, present and future alimony from the other."

At the time of the separation agreement, Sharon was employed and earned an annual income of between $75,000 and $80,000.  She had a 401(k) plan containing approximately $10,000.  She also owed approximately $190,000 in student loans for children from a previous marriage.

At the same time, Francis owned a substantial interest in a company named U.S. Lawns, which had apparently achieved more than one million dollars in sales in the year 2011.[2]  He

---

[2] The Bankruptcy Court found that Francis "both worked and continued to have a substantial interest in U.S. Lawns which, in fact, around this period of time had achieved a million dollars in sales." (Tr. at 81). At trial, Francis was asked the following questions and gave the following responses:

    Q.    And what was the average annual sales of U.S. Lawns?

    A.    Well, it varied anywhere from—the first year I think it might have been $70,000 and we had gotten to be over a million-dollar company.

    Q.    And do you know when it became over a million-dollar company, what year?

    A.    It's been at least two years since we've been at that level, so I would say probably, I'm guessing 2011 was maybe the last year that we were at that level.

    Q.    Okay.  So prior to the divorce the company was worth approximately—or you had sales of over a million dollars, correct?

testified that he earned approximately $30,000 a year in salary from that business. The company paid for his automobile and cell phone bills, as well as his membership in a country club. The court found that the company also operated as "a type of fail-safe net in the event that he—in the event that he had insufficient funds to meet his needs." (Tr. at 81).

Shortly after the divorce judgment, Sharon reached a settlement with Wells Fargo in its claim for the mortgage deficiency. On June 13, 2012, a judgment for $20,000 entered for Wells Fargo against Sharon.

B.     **Procedural Background**

After Sharon settled with Wells Fargo, she commenced an action against Francis in the Middlesex Probate and Family Court, seeking contempt sanctions for his failure to pay the $20,000 judgment that had resulted from the settlement.

On November 21, 2012, Francis filed for Chapter 13 bankruptcy relief. Sharon took no further action on the contempt action, but instead filed a proof of claim asserting that Francis's duty to pay the Wells Fargo judgment on her behalf was a non-dischargeable domestic support obligation.

On July 19, 2013, Francis brought an adversary proceeding. He did not dispute that he owed a debt under the separation agreement, but he sought a declaration that the debt was dischargeable as a property settlement pursuant to 11 U.S.C. §§ 523(a)(15) and 1328(a)(2).

Trial was held by the Bankruptcy Court on May 13, 2014. The two parties were the only witnesses. At the conclusion of the proceeding, the court ruled in favor of Sharon, finding that

---

A.     Yes.

(Tr. at 54-55).

she had met her burden to demonstrate that Francis's debt under the separation agreement was a non-dischargeable domestic support obligation pursuant to 11 U.S.C. § 523(a)(5).

The Bankruptcy Court primarily considered three factors in reaching its decision: (1) "the language and the substance" of the separation agreement; (2) "the parties' financial circumstances at the time of the order"; and (3) "the function that was served by the obligation" at the time the separation agreement was made enforceable by the divorce judgment. (Tr. at 82-83) (citing *In re Gianakas*, 917 F.2d 759, 762-63 (3d Cir. 1997)).

In assessing the first factor, the court noted that the language obligating Francis to "assume all responsibilities" arising from the second mortgage appeared within the "Debt" subsection of the "Property Division and Debts" section of the separation agreement. However, the court stated that it gave "very little weight to the language of the separation agreement" for two reasons. (*Id.* at 83). First, it noted that some of the subsections within the "Property Division and Debts" section—including "Pension/Retirement Benefits," "Debt," and "Bank Accounts"—encompassed obligations that have been held to qualify as domestic support. (*Id.*) (citing *In re Soforenko*, 203 B.R. 853, 861 (Bankr. D. Mass. 1997)). Second, it found that any inference of intent on the part of the parties in crafting the separation agreement was negated by the circumstances of the agreement's formation. Because the parties did not draft the agreement, but instead relied upon a Probate Court family service officer (with no assistance from counsel) to fill in the blanks of a pre-typed form, the court stated that it "[could not] get anything out of this agreement that shows intentionality other than the parties' intention to communicate what they wanted to see in the agreement and then the family service officer['s] decision into which category to place those agreements." (*Id.* at 84).

6

With respect to the second factor, the court found that "[Sharon] had a modest income, but overwhelming debt at the time of the preparation of the separation agreement." (*Id.*). It further found that "[Francis] had invested before and indeed at this time had an investment in a company which then or shortly thereafter reflected a substantial potential and was able to use that company in order to satisfy some of his personal needs as well." (*Id.*).

The court described the third factor—the function served by the obligation at the time of the divorce judgment—as the "ultimate question" it had to resolve. It stated:

> I find that the function was to enable [Sharon] to be able to satisfy her needs without the burden of this additional deficiency. . . . At the time of the separation agreement, February 29, 2012, this obligation was $90,000 and there was no way—no way whatsoever that [Sharon] was going to be able to satisfy that obligation in whole or in substantial part without robbing herself of the funds that she needed to sustain herself. . . . I have no doubt whatsoever that the debt decision was made because of [Francis's] belief at the time that [Sharon] would never be able to sustain and pay for this particular obligation. Had this obligation been visited upon her, this $90,000 obligation, then she would not have been able to sustain herself.

(*Id.* at 84-85).

On the basis of the above findings, the court determined that Francis's assumption of the debt was "in the nature of support." (*Id.* at 85). Accordingly, it found in favor of Sharon and ruled that the debt was not dischargeable.

On May 20, 2014, Francis appealed the decision of the Bankruptcy Court. The sole question on appeal is whether the debt owed by Francis to Sharon under their separation agreement is dischargeable.

## III. <u>Analysis</u>

A debtor who has filed under Chapter 13 of the Bankruptcy Code may discharge debts arising under a divorce judgment or separation agreement, except those that are designed to meet

7

"a domestic support obligation." 11 U.S.C. §§ 523(a)(5), 1328(a)(2). The term "domestic support obligation" includes a debt to a spouse or former spouse that is "in the nature of alimony, maintenance, or support . . . , *without regard to whether such debt is expressly so designated*." 11 U.S.C. § 101(14A)(B). "The party seeking to have a debt determined a [domestic support obligation] and thus nondischargeable bears the burden of proving that the obligation is in the nature of support." *In re Smith*, 586 F.3d 69, 73 (1st Cir, 2009). The determination is made under federal bankruptcy law, not state law. *Id.* (citing *In re Werthen*, 329 F.3d 269, 272-73 (1st Cir. 2009).

In determining whether a particular debt represents a domestic support obligation, "[t]he label applied to the obligation by the court or the parties is not necessarily controlling." *Id.* Instead, courts evaluate "the intended purpose the obligation was meant to serve." *Id.* at 74. A range of factors can be relevant to the inquiry, and courts are not bound to use any "specific multi-factor test . . . to discern intent." *Id.*; *see In re Soforenko*, 203 B.R. 853, 859 (Bankr. D. Mass. 1997) (describing the "variety of multi factor tests" used by courts within the First Circuit to discern intent). The specific factors that prove critical to a particular case vary based on "the totality of the circumstances." *Smith*, 586 F.3d at 74 (quoting, and affirming, the Bankruptcy Appellate Panel's decision in *In re Smith*, 398 B.R. 715, 722 (B.A.P. 1st Cir. 2008)).

Francis appears to contend that the Bankruptcy Court committed reversible error in three respects. First, he contends that the court should not have applied a three-factor test to determine whether the debt represented a "domestic support obligation," and instead should have utilized a "totality of the circumstance test." (Br. at 19). Second, he contends that the court violated the parol evidence rule by allowing Sharon to testify as to her intent at the time the separation

8

agreement was formulated. Finally, he contends that the court incorrectly concluded that his debt under the separation agreement was a domestic support obligation and thus not dischargeable.

Francis's first contention betrays a misreading of *Smith*. That case did not announce a "totality of the circumstances" test; it clarified that no one multi-factor test is required and that "the critical factors depend on the totality of circumstances of a particular case." *In re Smith*, 586 F.3d at 74 (quoting and affirming *In re Smith*, 398 B.R. at 722 ). Moreover, *Smith* cited to *In re Soforenko*, 203 B.R. at 859, for the proposition that a variety of multi-factor tests have been used by courts in the First Circuit. The court in *Soforenko* used the same three-factor test that was used by the Bankruptcy Court here. Accordingly, the court did not err in applying that three-factor test to the facts of this case.

The Bankruptcy Court also did not err by considering Sharon's testimony as to her intent. First, the parol evidence rule—which limits courts' consideration of external evidence when interpreting the language of a contract—arises under Massachusetts common law; the determination of whether a debt represents a domestic support obligation is made under federal bankruptcy law. *Smith*, 586 F.3d at 73. That determination is based on "the intent . . . of the parties at the time of the settlement agreement." *Soforenko*, 203 B.R. at 859. In order to discern that intent, courts must necessarily go beyond the language of the separation agreement. *See In re Werthen*, 329 F.3d at 273 (1st Cir. 2003) ("[F]ederal courts have been unwilling to treat the label applied by the [separation agreement] as controlling."); *see also* 11 U.S.C. § 101(14A)(B) ("The term 'domestic support obligation' means a debt . . . that is . . . in the nature of alimony, maintenance, or support . . . , *without regard to whether such debt is expressly so designated*.")

(emphasis added). For that reason, the Bankruptcy Court did not err in allowing Sharon to testify as to her intent in signing the separation agreement.[3]

Finally, determining whether Francis's debt was a property settlement or a domestic support obligation required the court to answer a "mixed question of law and fact." *See In re Reale*, 393 B.R. 821, 825 (B.A.P. 1st Cir. 2008), *aff'd*, 584 F.3d 27 (1st Cir. 2009). Therefore, the proper standard of review is for clear error "unless the bankruptcy court's analysis was based on a mistaken view of the legal principles involved." *Id.* (quoting *In re Carp*, 340 F.3d 15, 22 (1st Cir. 2003)).

The Court has already determined that the Bankruptcy Court applied the proper legal standard to its determination of this question. It properly assigned the burden of proof to Sharon and it used one of many acceptable multi-factor tests to evaluate the intent of the parties in creating the obligation. Therefore, its analysis was not "based on a mistaken view of the legal principles involved." *See Carp*, 340 F.3d at 22.

Nor was the court's ultimate determination—that Francis's debt represented a support obligation—clearly erroneous. The evidence supplied by the parties demonstrated that at the time of the divorce judgment, Francis owned a substantial interest in a company that had recently surpassed one million dollars in sales and Sharon was in substantial debt. It also demonstrated that the separation agreement was not drafted by the parties with the assistance of counsel, but

---

[3] Francis cites *Coffin v. Bowater, Inc.*, 501 F.3d 80, 98 (1st Cir. 2007), for the proposition that "[a]fter the fact self-serving testimony to add to, alter or amend the integrated agreement is prohibited." (Br. at 17). Putting aside the fact that *Coffin* arose in the context of federal labor law and appears completely unrelated to bankruptcy law, the cited section refers to a situation in which a contract is unambiguous on its face and a party seeks to introduce self-serving testimony supporting a latent ambiguity. Here, the Bankruptcy Court had a duty to look beyond the express language of the separation agreement to determine the true intent of the parties. *See* 11 U.S.C. § 101(14A)(B) (explaining that a debt to a former spouse that is "in the nature of alimony, maintenance, or support" constitutes a domestic support obligation "without regard to whether such debt is expressly so designated"). For that reason, the separation agreement was necessarily ambiguous and the analysis of *Coffin* does not apply.

was instead written on a pre-typed form by a Probate Court family service officer. That evidence, combined with the testimony of both parties as to their intentions, was more than sufficient to sustain the court's finding.

Accordingly, the judgment will be affirmed.[4]

### IV.     Conclusion

For the foregoing reasons, the Order of the Bankruptcy Court dated May 13, 2014, is AFFIRMED, and appellee's request for sanctions is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: March 16, 2015

---

[4] In her brief, Sharon asks the Court to sanction Francis under Rule 38 of the Federal Rules of Appellate Procedure or 28 U.S.C § 1927 for bringing a frivolous appeal. First, on a technical point, appeals from a Bankruptcy Court to this Court are governed by the Federal Rules of Bankruptcy Procedure, not the Federal Rules of Appellate Procedure. More importantly, the appeal is not frivolous under Fed. R. Bankr. P. 8020(a). Nor has Francis's counsel engaged in any actions which warrant sanctions under § 1927; sanctions under that section are only proper when an "attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). Accordingly, the request for sanctions will be denied.